**SO ORDERED.**

**SIGNED this 31 day of March, 2008.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILSON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **MARIFDARR, INC.** | **08-00339-8-RDD** |
| DEBTOR | |
| | |
| **BUSINESS LOAN CENTER, LLC** | |
| Plaintiff | **ADVERSARY PROCEEDING NO.** |
| v. | **08-00007-8-RDD-AP** |
| **MARIFDARR, INC. & MUHAMMAD ARIF DARR & FARRAH ARIF DARR** | |
| Defendants | |
| | |
| **BLX Capital, LLC** | |
| Plaintiff | **ADVERSARY PROCEEDING NO.** |
| v. | **08-00008-8-RDD-AP** |
| **MARIFDARR, INC. & MUHAMMAD ARIF DARR & FARRAH ARIF DARR** | |
| Defendants | |

**ORDER ALLOWING MOTION TO SET ASIDE ENTRY OF DEFAULT**

These adversary proceedings are before the court on the defendants' motion to set aside entries of default entered in the above actions. A hearing was held in Wilson, North Carolina on March 25, 2008.

On October 23, 2007, a complaint was filed by Business Loan Center, LLC ("BLC") against the defendants in Wayne County Superior Court. A summons and notice of hearing in claim and delivery were also issued on that date, with a hearing date of November 13, 2007 set for the claim and delivery action. On October 25, 2007, a complaint was filed by BLX Capital, LLC ("BLX") against the defendants in Wayne County Superior Court. A summons was also issued on that date. The defendants' responses in those matters were due on November 27, 2007 and November 28, 2007. Responses were not filed prior to those dates and entry of default was made in both matters on December 12, 2007. The defendant, Marifdarr, Inc. ("Marifdarr") filed bankruptcy on January 17, 2008. On January 18, 2008, both matters were removed from Wayne County Superior Court to this court. The defendants subsequently filed a motion to set aside the entry of default that occurred in Wayne County Superior Court.

At the hearing, Mr. Darr testified that, upon receiving notice of the complaints, he visited three different attorneys in Goldsboro, but each of them told him they were not qualified to take his case. Each explained that they only handled consumer bankruptcies and that this would be a chapter 11 filing. However, Mr. Craig Bryant offered to represent him only for purposes of having the claim and delivery matters continued, at no charge. At least two continuances of the claim and delivery hearings were agreed to between Mr. Bryant and counsel for the plaintiff, the last of which was after

2

November 27, 2007. Mr. Darr was eventually referred to Mr. Trawick Stubbs, who met with Mr. Darr and extensively studied his case. Mr. Stubbs offered to represent Mr. Darr, but required a substantial retainer, which Mr. Darr was unable to pay. Mr. Darr next made an appointment with Mr. William Janvier, who also met with him and studied his case. However, Mr. Janvier indicated that he would not be able to handle the case because of the limited time left to respond to the complaints. Mr. Darr again contacted Mr. Stubbs to seek his advice. Mr. Stubbs referred Mr. Darr to Mr. Jason Hendren. After pleading with Mr. Hendren to take the case, Mr. Darr agreed to make partial payments of a retainer to Mr. Hendren.

Mr. Darr explained that he had two heart procedures after being served with the complaints. On November 7, 2007, he had a catheterization, and on November 21, 2007, Mr. Darr had a pacemaker and defibrillator inserted. During that time, although he was on medical restriction, he continued to make efforts to meet with attorneys to find representation.

Mr. Darr testified that, on November 27, 2007, when he spoke with Mr. Hendren, Mr. Hendren explained to him that he would have to seek an extension to respond to the complaints, as November 27, 2007 was the last day to respond. Mr. Hendren instructed Mr. Darr to go to the clerk of court's office in Wayne County and file a request for an extension. Mr. Darr testified that he visited the office of the Clerk of Court of Wayne County on November 27, 2007. The lady with whom he spoke at the office of the clerk of court indicated that he did not need an extension because the plaintiffs had already filed for and received extensions.

Mr. Jason Hendren, Marifdarr's bankruptcy counsel, testified that he had been licensed to practice law since 1999 and primarily devoted his practice to chapter 7 and chapter 11 business bankruptcies. Mr. Hendren testified that Mr. Darr contacted him sometime in late November

3

regarding the possibility of filing suit against BLX and other parties. At that time, Mr. Darr had already been sued in Wayne County Superior Court by BLX and BLC. Mr. Hendren explained that, on November 27, 2007, during their first significant conversation, he learned from Mr. Darr that it was the last day to respond to the suits filed by BLX and BLC. On that same date, Mr. Hendren contacted counsel for BLX and BLC to request an extension by agreement. However, BLX and BLC would not agree to an extension. At that time, Mr. Hendren had not made the decision to represent Mr. Darr, but he did make an appointment to meet with Mr. Darr and advised Mr. Darr to go to the clerk of court's office in Wayne County and file a *pro se* request to extend the time to answer the complaints. On December 5, 2007, Mr. Hendren met with Mr. Darr, and Mr. Darr indicated that he had taken care of the extended response time with the clerk of court.

On December 6, 2007, after agreeing to take Mr. Darr's case, Mr. Hendren contacted the Wayne County Clerk of Court's office to confirm that the response time had been extended and to determine the status of the case. At that time, he was informed that the respnose time had not been extended, as the clerk believed that Mr. Darr was asking for a continuance of the claim and delivery hearing. After speaking with the clerk, Mr. Hendren mailed for filing a motion for extension of time to answer and served it upon plaintiffs' counsel on December 6, 2007. Mr. Hendren later received the motion back from the clerk of court's office unfiled on December 13, 2007. Upon receipt, he contacted the clerk's office and explained that they should stamp the motion filed, even if it was considered untimely. He then remailed the motion with an explanatory letter. The clerk received the motion again on December 17, 2007 and file stamped it at that time.

On December 12, 2007, Mr. Hendren received a motion for entry of default from counsel for BLX and BLC. On December 13, 2007, Mr. Hendren mailed a response to the motion for entry of

4

default, citing Mr. Darr's efforts to find representation prior to the expiration of the time for responding. The clerk of court had entered an entry of default on the same date the motion for entry of default was filed, because of the untimeliness of the motion for extension of time to respond. However, Mr. Hendren did not learn of the order until January 17, 2008.

On January 17, 2008, Marifdarr filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code. On January 18, 2008, the actions pending in Wayne County Superior Court were removed to the bankruptcy court. On January 22, 2008, Mr. Hendren filed the motions to set aside entry of default. Mr. Hendren indicated that, in his opinion, good cause existed to have the entry of default set aside because of Mr. Darr's efforts to find an attorney and because of the heart procedures Mr. Darr had endured during the period between the service of the complaint and the response due date. Mr. Hendren also indicated that, after reviewing Mr. Darr's documents, it was also his opinion that a meritorious defense to the plaintiffs' actions existed. He explained that he knew there was a legitimate dispute and that there was *prima facie* evidence showing that Mr. Darr had real disputes with BLX.

Upon questioning by the court, the plaintiffs' counsel in the state court actions, Mr. Brooks Bossong, indicated that he received the defendants' motion for extension of time prior to filing the motion for entry of default. However, he did not contact Mr. Hendren prior to filing the motion for entry of default.

Mr. Bossong also prepared an affidavit regarding his involvement in the state court actions. That affidavit was filed contemporaneously with the plaintiffs' response to this motion. In that affidavit, Mr. Bossong describes his discussions with Mr. Craig Bryant regarding continuances of the claim and delivery hearing. Mr. Bossong indicates that he consented to several continuances of

5

that matter. Mr. Bossong then explains that he was contacted by Mr. Hendren in late November 2007 regarding an extension of time to respond to the state court actions. At that time, Mr. Hendren indicated that he was considering representing Mr. Darr. In response, Mr. Bossong indicated that he would have to obtain authorization from his clients because of the history between the parties. On the date of the deadline for responding to the actions, Mr. Bossong informed a member of Mr. Hendren's staff that his clients would not consent to an extension of the time to respond to the state court actions. He also recommended that Mr. Hendren have Mr. Darr file a request for extension with the clerk of court in order to prevent a default. On November 30, 2007, Mr. Bossong sent a letter to Mr. Bryant indicating that the defendants were in default and that if there was not a prompt resolution, plaintiffs would seek entry of default.

Counsel for the defendants refers to the case of Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 204-05 (4th Cir. 2006), which states,

> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

(citations omitted). Counsel argues that these factors should be construed more liberally in the instance of an entry of default as opposed to a default judgment. In this case, counsel contends that the defendants do have a meritorious defense, as the overall fraudulent scheme of the plaintiffs renders these contracts void as against public policy. Counsel further argues that the defendants acted in a reasonably prompt manner to correct the default. As to the responsibility of the defendants, counsel points to Mr. Darr's efforts to find an attorney in a timely fashion, despite being hospitalized twice with heart problems. As to the prejudice to the plaintiffs in this case, counsel

contends that there would be no prejudice caused by setting aside the entry of default, as all witnesses and evidence would still be available to the plaintiffs. Finally, under these circumstances, counsel argues there is no reason for any sanctions against the defendants.

Counsel for the plaintiffs explains that his clients consented to continuing the claim and delivery hearings two or three times. However, they refused to agree to an extension to the time to answer the complaints because of the long past history between the parties. Upon notifying defendants' proposed attorney, Mr. Hendren, that there would be no consent to the extension, Mr. Bossong, counsel for the plaintiffs, advised Mr. Hendren to have Mr. Darr file for an extension with the clerk of court. However, a motion for the extension of time was not mailed until after Mr. Bossong's letter had been mailed to Mr. Bryant indicating that he would be seeking entry of default. After mailing the motion for an extension, Mr. Hendren did not check with the clerk to make certain it had been filed, and was unaware that it had not been filed until he received it back in the mail one week later. By that time, entry of default had been made. Counsel refers to the case of In re Jones, 2000 WL 33673759, *4 (Bankr. M.D.N.C. Aug. 28, 2000), which found that "[s]imply put, a non-prisoner litigant who entrusts his filing with the postal processes, without taking further steps to ensure that the notice of appeal is timely 'filed' with the district court, cannot establish excusable neglect." Counsel argues that, although this case involves a motion to extend time, rather than a notice of appeal, the same standard should apply. Counsel argues that the defendants should not be given a second chance in this case as Mr. Bossong waited nearly two weeks after notifying Mr. Bryant of his intent to seek entry of default before he actually filed his motion for entry of default, offering the defendants ample opportunity to remedy the situation. For these reasons, counsel argues that the defendants have failed to show good faith.

Counsel for the plaintiffs further argues that the defendants do not have a meritorious defense, as they signed multiple releases of liability as to the plaintiffs. Counsel refers to In re Maco Homes, Inc., 96 F.3d 1439, 96 F.3d 1439 (Table) (4th Cir. 1996), where the Fourth Circuit Court of Appeals found that economic duress and fraud in the inducement were not valid defenses after full releases had been executed by the debtor. Counsel argues that, based upon the facts alleged in the defendants' counterclaim, this case would be found in the plaintiffs' favor pursuant to Maco.

Based on the foregoing, the defendants' motion to set aside entry of default is **ALLOWED**. The court finds that, through the facts established, the defendants have shown good cause for the default to be set aside. It has been shown that Mr. Darr had two invasive heart procedures in November 2007. Mr. Darr was not dilatory in seeking counsel. Mr. Darr went to the clerk of court's office to request extension timely on November 27, 2007, but there was a misunderstanding with the clerk. The plaintiff had agreed to continuances for the claim and delivery hearing past November 27, 2007, so there was no prejudice to the plaintiffs. The court further finds that first extensions, as a matter of course, are routinely granted by state court clerks to allow defendants to hire counsel. Finally, the plaintiffs' attorney knew a motion to extend had been filed by Mr. Hendren when plaintiffs' counsel filed the motion for entry of default.

Further, based upon Mr. Hendren's testimony and the pleadings filed in these actions, there appears to have been a meritorious defense raised by the defendants. The court finds that because of the early stage of this proceeding, and the answer and counterclaim having been filed within the time period for which an extension would have been granted, there is little or no prejudice to the plaintiffs by setting aside the entry of default.

**SO ORDERED.**

**END OF DOCUMENT**